```
                  UNITED STATES DISTRICT COURT
                           FOR THE
                  WESTERN DISTRICT OF NEW YORK

TAWANA R. WYATT, as             )
Administrator of the Estate     )
of INDIA T. CUMMINGS,           )
                                )
        Plaintiff,              )
                                )
              v.                )    File No. 1:17-cv-446-wks
                                )
CITY OF LACKAWANNA, CITY OF     )
LACKAWANNA POLICE DEPARTMENT,   )
OFFICER JOHN-PAUL FIGLEWSKI,    )
OFFICER BALCARCZYK, OFFICER     )
JONES, CAPTAIN JOSEPH LEO,      )
CAPTAIN ROBERT JANOWSKI,        )
COUNTY OF ERIE, ERIE COUNTY     )
SHERIFF'S OFFICE, SHERIFF       )
TIMOTHY B. HOWARD, SHERIFF'S    )
DEPUTY BEARING BADGE 1079,      )
AMY JORDAN, R.N., BRIDGET       )
LEONARD, HOLLANI GOLTZ, JILL    )
LOBOCCHIARO, UNIVERSITY         )
PSYCHIATRIC PRACTICE, INC.,     )
PETER MARTIN, M.D., EVELYN      )
COGGINS, M.D., TOM CHAPIN,      )
M.D., ERIE COUNTY MEDICAL       )
CENTER CORPORATION, GERALD      )
IGOE, M.D., TARA M. CIESLA,     )
P.A., UNIVERSITY EMERGENCY      )
MEDICAL SERVICES, INC.,         )
                                )
        Defendants.             )
```

**OPINION AND ORDER**

Plaintiff Tawana Wyatt, as administrator of the Estate of India Cummings, brings this action alleging mistreatment related to Cummings' arrest, incarceration, and medical care. Pending before the Court are motions filed by medical providers seeking dismissal of Wyatt's federal constitutional claims for failure to meet the required legal standard, and her state law claims for

lack of supplemental jurisdiction. The first motion is submitted by defendants Gerald Igoe, M.D., Tara M. Ciesla, P.A., and University Emergency Medical Services, Inc. ("UEMS") (collectively "UEMS defendants"). ECF No. 110. The second motion is submitted by defendant Erie County Medical Center Corporation ("ECMCC"). ECF No. 123. For the reasons set forth below, the motions to dismiss are granted.

## Factual and Procedural Background

Wyatt alleges that on February 1, 2016, Cummings was arrested and detained at the Erie County Holding Center ("ECHC"). While in police custody she suffered a spiral fracture of her left humerus. Cummings was subsequently transported to the Emergency Department at Erie County Medical Center ("ECMC") for treatment of her broken arm. There, she was treated by Dr. Igoe and Ms. Ciesla, both of whom are employees of UEMS. UEMS reportedly contracts with ECMCC to provide emergency medical services. Cummings was discharged at approximately 2:00 a.m. on February 2, 2016 and returned to ECHC.

Over the course of the following two weeks, Cummings allegedly became delusional and refused to eat or drink. On February 17, 2016, she lost consciousness and showed no observable heart rate or respiration. She was transported to Buffalo General Hospital, where she was diagnosed with cardiac arrest, severe dehydration, malnutrition, and organ failure. She

died at the hospital four days later.

Wyatt's First Amended Complaint ("FAC") asserted three causes of action against the UEMS defendants. Two of those causes of action alleged medical malpractice, while the third alleged violations of Cummings' civil rights under 42 U.S.C. § 1983. The FAC similarly asserted three causes of action against ECMCC: one for medical malpractice, one for federal civil rights violations, and one for wrongful death. The FAC claimed that Dr. Igoe, Ms. Ciesla and ECMCC failed to properly diagnose and treat Cummings' physical and mental health conditions prior to her discharge on February 2, 2016.

The UEMS defendants and ECMCC each moved to dismiss the FAC, arguing that Wyatt had failed to state a claim under 42 U.S.C. § 1983 because her allegations fell short of alleging "deliberate indifference" as required for a federal claim. They also argued that in the absence of a valid federal claim, the Court lacked jurisdiction over the remaining state law claims. The Court agreed, dismissed Wyatt's claims without prejudice, and granted her leave to amend her pleadings.

Wyatt subsequently filed a Second Amended Complaint ("SAC"). The SAC asserts four causes of action against the UEMS defendants, including medical malpractice claims and a constitutional claim under 42 U.S.C. § 1983. Wyatt has added a "*Monell* claim" against UEMS. The SAC also asserts four causes of

3

action against ECMCC: one for medical malpractice, two under Section 1983, and one for wrongful death. The factual allegations in the SAC with respect to the UEMS defendants and ECMCC are more specific than those set forth in the FAC. The SAC highlights medical notes reporting that Cummings "states that a man assaulted her, and pulled on her arm, breaking it." The ECMC Summary/Departure report noted that Cummings offered "multiple stories for arm injury. Refusing to cooperat[e] w/ MD ... MD aware and in to see patient." The medical records also allegedly state that the "[p]atient sustained an MVC" and was "unable to recall the details of the accident, questionable loss of consciousness, belted driver with airbag deployment. Patient is uncertain when she sustained her injury."

The SAC claims that the discrepancies in Cummings' statements "should have alerted the ECMCC medical staff, including [Dr. Igoe and Ms. Ciesla], to perform a further workup including a chest x-ray and Mental Health referral, which they failed to so perform." The SAC further claims that defendants failed to diagnose a medical condition revealed by Cummings' blood work, which condition "may have contributed to her altered mental state." In summarizing her claim, Wyatt submits that Cummings should not have been transferred from ECMC to ECHC on February 2, 2016 because it was "evident to [defendants] that she required immediate mental health diagnosis and treatment, and

4

required further diagnosis concerning her physical condition."

An additional set of factual allegations in the SAC is specific to ECMCC. Those allegations pertain to "9Z2 beds," which are described in the parties' filings as forensic mental health beds. When such beds were unavailable at ECMC, detainees were returned to ECHC. The SAC alleges that it was the "custom, practice, actions, policy, and/or failures of decisionmakers at the ECMCC to maintain only two such beds for [inmates and detainees] and to negligently, and or with gross negligence ... send detainees to ECHC, where it was known or should have been known ... that such inmates or patients would not receive the requisite and adequate care" required by the Constitution.

The SAC also includes, as an attachment, a Commission Report issued after a special investigation into Cummings' treatment. The Commission Report states, in relevant part: "The Medical Review Board finds that the discrepancy in the cause of the injury and the multiple car accidents prior to her arrest with the altered mental status should have alerted the ECMC medical staff to perform a further workup including a chest x-ray and Mental Heath referral." The movants now argue that the Medical Review Board's conclusions, as well as each of the allegations set forth in the SAC, may reflect medical malpractice but do not rise to deliberate indifference as required for a federal civil rights claim. Consequently, they have moved for dismissal of the

federal causes of action for failure to state a claim, and dismissal of the state law claims for lack of supplemental jurisdiction.

## Discussion

### I. Motion to Dismiss Standards

The movants seek dismissal of Wyatt's federal claims under Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In assessing whether a plaintiff has met this standard, the Court must "constru[e] the complaint liberally, accepting all factual allegations ... as true, and drawing all reasonable inferences in the plaintiff's favor ." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008).

"On a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Sharkey v. Quarantillo*, 541 F.3d 75, 83 (2d Cir. 2008) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). More than "labels and conclusions" are required, and "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S. Ct.

at 1965. Accordingly, "bald assertions and conclusions of law will not suffice." *Reddington v. Staten Island Univ. Hosp.*, 511 F.3d 126, 132 (2d Cir. 2007).

The parties have also moved for dismissal of Wyatt's state law claims for lack of supplemental jurisdiction. Under Federal Rule of Civil Procedure 12(b)(1), a case is dismissed for lack of subject matter jurisdiction when the federal court lacks the power to adjudicate it. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). A district court may exercise supplemental jurisdiction over state law claims under 28 U.S.C. § 1367. 28 U.S.C. § 1367(a). Section 1367(c)(3) provides that a district court "may" decline to exercise supplemental jurisdiction when it has dismissed the related federal claims. 28 U.S.C. § 1367(c)(3). Accordingly, the statute is permissive rather than mandatory. *See generally Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998).

## II. Constitutional Claims

Wyatt brings her constitutional claims against the UEMS defendants and ECMCC pursuant to 42 U.S.C. § 1983. The UEMS defendants argue that they cannot be sued under 42 U.S.C. § 1983 because they are not state actors. As a general rule, private entities are not liable under Section 1983. *See National Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988). There is an exception, however, when "conduct that is formally

7

'private' may become so entwined with governmental policies or so impregnated with a governmental character as to become subject to the constitutional limitations [p]laced upon state action." *Perez v. Sugarman*, 499 F.2d 761, 764 (2d Cir. 1974).

> The actions of nominally private entities are attributable to the state when those actions meet one of three tests: [1] [t]he compulsion test[, where] the entity acts pursuant to the coercive power of the state or is controlled by the state[;] [2] [t]he public function test[, where] the entity has been delegated a public function by the [s]tate[;] or, [3] [t]he joint action test or close nexus test[, where] the state provides *significant encouragement* to the entity, the entity is a willful participant in *joint activity* with the [s]tate, or the entity's functions are *entwine*d with state policies.

*Hollander v. Copacabana Nightclub*, 624 F.3d 30, 34 (2d Cir. 2010) (internal quotation marks omitted) (quoting *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008)).

Here, the UEMS defendants do not qualify as state actors under any of these three tests. First, their treatment of Cummings was not compelled by means of a contract with the State or otherwise. Indeed, there is no allegation that the UEMS defendants contracted specifically to provide medical care to inmates or detainees. Second, their work as emergency room health care providers was not a delegated public function, and third, they were not engaged in a joint activity with the state. *See Koulkina v. City of New York*, 559 F. Supp. 2d 300, 320 (S.D.N.Y. 2008) ("Private physicians are generally not state

actors, especially where the physician is 'not performing a function traditionally reserved for the State and where [the physician] was not under contract with the State to provide medical services.'" (*quoting Vazquez v. Marciano*, 169 F. Supp. 2d 248, 253-54 (S.D.N.Y. 2001)); *see also Sykes v. McPhillips*, 412 F. Supp. 2d 197, 204 (N.D.N.Y. 2006) (declining to deem a private physician a state actor were he "engaged in a single encounter with a prisoner presented for emergency treatment, which he was obligated under law to provide").

The SAC alleges that Dr. Igoe and Ms. Ciesla "were state actors under color of law of a statute ordinance, regulation, custom, or usage [of] the law of New York State with respect to the care and treatment of [Cummings] while a patient at ECMCC facilities and an inmate in the ECHC." The Second Circuit has held, however, that "a private entity does not become a state actor for purposes of Section 1983 merely on the basis of the private entity's creation, funding, licensing, or regulation by the government." *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012). When treating Cummings, the providers in question made decisions based upon their medical judgment, and not upon any specific law or regulation. Their decisions were not mandated by the state, and their treatment of Cummings did not amount to state action. *See, e.g., Johnson v. Fein*, No. 9:18-CV-96 (DNH/DEP), 2019 WL 1877584, at *6 (N.D.N.Y. Mar. 25, 2019),

9

*report and recommendation adopted*, 2019 WL 1877296 (N.D.N.Y. Apr. 26, 2019) ("Dr. Fein's treatment decisions resulted from 'pure medical judgment,' which dispels any notion of state compulsion."); *see also Davis v. Cole-Hoover*, No. 03-CV-0550, 2004 WL 1574649, at *10 (W.D.N.Y. June 14, 2004) ("[T]he medical decisions of private doctors at issue here do not reflect government influence or inducement.").

The UEMS defendants, together with ECMCC, also argue that the SAC fails to allege a viable constitutional claim. Because Cummings was a pretrial detainee, the legal standard to be applied comes from the Due Process Clause. *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) ("A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eighth Amendment."). That standard provides that "[a] pretrial detainee may establish a § 1983 claim for allegedly unconstitutional conditions of confinement by showing that the officers acted with deliberate indifference to the challenged conditions." *Darnell*, 849 F.3d at 29.

To state a claim of deliberate indifference, a plaintiff must satisfy two elements: (1) an "objective" element, which requires a "showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the

10

right to due process," and (2) a "subjective" element, which requires a "showing that the officer acted with at least deliberate indifference to the challenged conditions." *Id*. In the context of medical care, the plaintiff first "must show that the conditions, either alone or in combination, pose[d] an unreasonable risk of serious damage to [the detainee's] health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) *(citing Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). The second element requires the plaintiff to allege "that the [defendant] acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the condition posed to the pretrial detainee even though the [defendant] knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35.

In order to meet the objective requirement, the alleged deprivation of adequate medical care must be "sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). In assessing seriousness, the Court must examine how the care was allegedly inadequate and that how inadequacy caused or would likely cause the plaintiff harm. *Id.* (citing *Helling v. McKinney*, 509 U.S. 25, 32–33 (1993)).

Here, Wyatt claims that ECMC Emergency Department providers, including Dr. Igoe and Ms. Ciesla, "were aware of the objectively

11

serious medical conditions of decedent and ... with deliberate indifference did fail to act, to ignore the life-threatening or fast-degenerating condition of decedent ... even though defendants knew or should have known the conditions posed an excessive risk to the health or safety of decedent."  The factual allegations underlying these claims consist primarily of the Commission Report and the finding by the Medical Board.  The Medical Board concluded that the providers should have taken additional action, including ordering a chest x-ray and a mental health referral, and should have identified a medical condition revealed by Cummings' blood work.  The movants now contend that, even accepting the Medical Board's conclusions, the facts alleged do not amount to a plausible claim of deliberate indifference to a serious medical need.

The allegations in the SAC state that Cummings arrived at ECMC with a broken arm.  That injury was treated, and she was soon returned to ECHC.  Over the next two weeks Cummings displayed behavior and medical issues that resulted in her ultimate admission to Buffalo General Hospital.  There is no doubt that Cummings' condition became objectively serious during her weeks of detention.

The question presented here is whether, when faced with inconsistent statements about the origins of her arm injury, it should have been apparent that Cummings had other serious medical

needs.  If the Court assumes for the sake of argument that Cummings' needs were objectively serious when she arrived at ECMC, it must turn to the subjective element of the test.  The subjective element asks whether the official acted with "a sufficiently culpable state of mind."  *Farmer*, 511 U.S. at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 300 (1991)).  In order to satisfy this element, Wyatt must demonstrate more than a negligent failure to provide adequate medical care and, as stated above, must instead show deliberate indifference.  "Deliberate indifference is a mental state equivalent to subjective recklessness, as the term is used in criminal law.  This mental state requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result."  *Salahuddin*, 467 F.3d at 280 (citations omitted).

As the movants properly contend, the SAC fails to set forth a plausible allegation that Cummings' health care providers were aware of a risk of serious medical harm and nonetheless failed to act.  The Medical Board reportedly found that additional diagnostic steps should have been taken.  Relying on that conclusion, Wyatt claims that the providers should have performed a chest x-ray and ordered a mental health evaluation.  There is also an allegation that blood work was not properly assessed.  In *Estelle v. Gamble*, the Supreme Court noted that "the question whether an X-ray or additional diagnostic techniques or forms of

treatment is indicated is a classic example of a matter for medical judgment.  A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment." 429 U.S. 97, 107 (1976).  Likewise, a "complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the [Constitution]."  *Id.* at 106.

Cummings was taken to ECMC for treatment of arm pain and was treated for a broken arm.  There is no allegation that she was either ignored or denied medical care for that injury.  A claim that her varied explanations, and her confused mental state generally, should have alerted providers to other medical or mental health issues constitutes an allegation of negligence. There are no allegations from which the Court can reasonably infer deliberate indifference on the part of Dr. Igoe, Ms. Ciesla, or other Emergency Department personnel.  Accordingly, the SAC fails to state a plausible federal claim against the UEMS defendants and ECMC medical staff.

In addition to claims regarding treatment by individual providers, Wyatt brings allegations of unconstitutional customs or policies by ECMCC and UEMS.  The SAC alleges generally that the movants failed to properly train or supervise their subordinates, and that such failure amounted to deliberate indifference.  This general allegation does not reference any

specific factual claims, and is in itself too conclusory to support a cause of action.[1]

ECMCC is more specifically accused of having an unlawful custom or policy with respect to inpatient mental health beds. The SAC alleges that "[a] 9Z2 bed is an inpatient mental health bed at the ECMCC facility that can provide a higher level of psychiatric inpatient care."  ECMC reportedly had two such beds. Although ECMCC had an agreement with Erie County to offer those beds for inmate or detainee use, when the beds are not made available the detainee is allegedly returned to ECHC, "resulting in the denial of adequate medical treatment."

ECMCC does not dispute that it may be subject to a claim of municipal liability under *Monell v. City of New York Department of Social Services*, 436 U.S. 658, 691-95 (1978).  To hold ECMCC liable under *Monell* and Section 1983, Wyatt must show an official policy or custom that caused the plaintiff to be subjected to a denial of a constitutional right.  *See Wary v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007).  The Second Circuit has held that "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy."  *Ricciuti v. N.Y.C. Transit*

---

[1] To the extent the SAC is claiming liability purely on the basis of an employer-employee relationship, it is well established that *respondeat superior* is not a basis for liability under Section 1983.  *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003).

15

*Authority*, 941 F.2d 119, 123 (2d Cir. 1991).

Here, the claims regarding 9Z2 beds are insufficient in several respects. First, for reasons discussed above, there is no plausible claim that the failure to provide Cummings with such a bed was a constitutional violation. Moreover, there is no allegation that ECMCC had a custom or policy of returning detainees or inmates to ECHC when they are psychiatrically unstable, regardless of 9Z2 bed availability. Nor is there an allegation that all 9Z2 beds were full when Cummings was at ECMC on the night of February 1, 2016. Finally, any alleged harm focuses on a single incident, yet Second Circuit precedent requires more. *See Ricciuti*, 941 F.2d at 123; *Newton v. City of New York*, 566 F. Supp. 2d 256 271 (S.D.N.Y. 2008) ("[A] custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the State.").

In opposition to ECMCC's motion to dismiss, Wyatt argues that the psychiatric bed allegation is not limited to February 1, 2016, but instead extends to a later period that same month when Wyatt was being held at ECHC and was allegedly waiting for access to a 9Z2 bed. The SAC claims that Cummings was "identified for a 9Z2 bed" by an ECHC interdisciplinary team but was "still awaiting bed availability," and that no effort was made to take her back to ECMC. That allegation does not support a claim that ECMCC had a custom or policy of denying proper psychiatric care

16

to detainees or inmates who were being attended to at ECMC, or that ECMCC was aware that Cummings or others held at ECHC were denied such care. The SAC therefore fails to state a plausible *Monell* claim against ECMCC, and the federal claims against the movants are dismissed.

### III. State Law Claims

With no plausible federal constitutional claims pending against them, the movants seek dismissal of Wyatt's state law claims. As noted above, 28 U.S.C. § 1367(c)(3) makes the exercise of supplemental jurisdiction discretionary when the related federal claims have been dismissed. The Supreme Court has held that "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). In keeping with this guidance, dismissal of the state law claims brought against the movants is warranted.

The Court also notes that the remaining federal claims, brought against other defendants, revolve mostly around Cummings' treatment during her arrest and her approximately two weeks of detention prior to her death. Because the UEMS defendants and ECMCC played no role in either the arrest or the multi-day detention, the remaining federal claims bear only a thin

17

relationship to the state law claims being brought against the movants.  *See Promisel v. First Am. Artificial Flowers Inc.*, 943 F.2d 251, 254 (2d Cir. 1991) (holding that disputes are part of the "same case or controversy" within § 1367 when they "derive from a common nucleus of operative fact").  Their motions to dismiss the state law claims are therefore granted and those claims are remanded to the state court.[2]

### Conclusion

For the reasons set forth above, the motions to dismiss filed by Gerald Igoe, M.D., Tara M. Ciesla, P.A., and University Emergency Medical Services, Inc. (ECF No. 110) and Erie County Medical Center Corporation (ECF No. 123) are granted.  The state law claims brought against those defendants are remanded to state court.

DATED at Burlington, Vermont, this 5th day of August, 2020.

/s/ William K. Sessions III
William K. Sessions III
U.S. District Court Judge

---

[2] This case was originally filed in the New York State Supreme Court, Erie County.